UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE RAMSEY,

Case No. 17-13713

Plaintiff,

Nancy G. Edmunds

v.

United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

Stephanie Dawkins Davis
United States Magistrate Judge

Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 14)**

## I. PROCEDURAL HISTORY

A.    Proceedings in this Court

On November 15, 2017, plaintiff Joyce Ramsey filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Nancy G. Edmunds referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for

supplemental security income benefits.  (Dkt. 3).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 13, 14).

B.    <u>Administrative Proceedings</u>

Ramsey filed an application for supplemental security income on January 21, 2015, alleging disability beginning on November 19, 2013. (Tr. 10).[1] The claims were initially disapproved by the Commissioner on May 19, 2015. (*Id.*). Ramsey requested a hearing and on July 27, 2016, she appeared with counsel, before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the case *de novo*. (Tr. 10-21). In a decision dated September 12, 2016, the ALJ found that plaintiff was not disabled. (Tr. 20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 3, 2017, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 11. All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Ramsey, born November 19, 1963, was 51 years old on the date the

application was filed, January 21, 2015.  (Tr. 19).  She has a high school education

and does not have past relevant work.  (*Id.*).  She claims she cannot work because

of a seizure disorder, anxiety, depression, IBS, gastroparesis, bulging discs,

sciatica, and an injury to her right wrist that did not heal completely.  (Tr. 32-33).

The ALJ applied the five-step disability analysis and found at step one that

Ramsey had not engaged in substantial gainful activity since January 21, 2015, the

application date.  (Tr. 17).  At step two, the ALJ found that Ramsey's lumbago

with sciatica, gastroesophageal reflux disease (GERD), irritable bowel syndrome

(IBS), borderline personality disorder/affective disorder/anxiety disorder/post-

traumatic stress disorder (PTSD)/cannabis disorder, tobacco use, and a history of

seizures were "severe" within the meaning of the second sequential step.  (*Id.*).

However, at step three, the ALJ found no evidence that plaintiff's impairments

singly or in combination met or medically equaled one of the listings in the

regulations.  (Tr. 18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual

> functional capacity to perform light work as defined in 20
> CFR 416.967(b) except she can never use ladders, ropes,
> and scaffolds; she could occasionally use ramp, stairs,
> stoop, kneel, crouch or crawl; she should avoid exposure
> to hazards including dangerous and unprotected
> machinery or heights; she could never use torque,
> pneumatic, or power tools; she could frequently but not
> constantly handle and finger with right upper extremity;
> she could never use left foot controls; she could not
> perform commercial driving; she should have no objects
> presented from the right; she could occasionally bend,
> twist and turn at the waist; she is limited to simple,
> unskilled work with 1, 2 or 3 step instruction [sic].

(Tr. 14-15). At step four, the ALJ found that Ramsey does not have past relevant

work. (Tr. 19). At step five, the ALJ denied Ramsey benefits because he found

that there were jobs that exist in significant numbers in the national economy that

she can perform. (Tr. 19-20).

    B.    Plaintiff's Claims of Error

    Ramsey argues that the ALJ improperly discounted her treating physician,

Dr. Kovan's opinions. According to Ramsey, the ALJ erred in giving the opinions

less than controlling weight according to the treating physician rule and did not

give good reasons for the weight given. (Dkt. 13, at p. 12-18). Ramsey contends

that the ALJ's analysis of Dr. Kovan's opinions is insufficient to comply with the

treating physician rule and that the ALJ misrepresented the record. (*Id.* at p. 13).

As to the latter contention, Ramsey points to "remarkable physical examination

findings" in the record to rebut the ALJ's statement that Dr. Kovan's opinions are

inconsistent with mild to moderate levels of limitation noted in physician examinations.  (*Id.* at p. 13-14).  Further, Ramsey contends that the ALJ did not discuss the requisite factors, or "good reasons," for giving the opinions little weight.  (*Id.* at p. 17).  Specifically, the ALJ did not discuss the length of the treatment relationship, the nature of the treatment relationship, Dr. Kovan's specialty, or the consistency of his opinion.  She contends that the ALJ's decision does not provide enough "substance" for her to understand the reason for rejecting the opinion of her treating physician.  (*Id.* at p. 18).

Ramsey next argues that the ALJ improperly evaluated her subjective complaints of pain.  (*Id.* at p. 19).  She contends that the ALJ provided perfunctory analysis, discounting her complaints of pain because she is able to perform basic household chores, she knits as a hobby, and she is able to drive.  (*Id.* at p. 20).  She contends that the ALJ mischaracterized the record and her statements about her ability to engage in activities of daily living and did not consider the record as a whole.

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's decision to discount Dr. Kovan's opinions.  According to the Commissioner, the ALJ was correct to discount Dr. Kovan's opinions because the opinions are inconsistent with the other evidence in the record.  (Dkt. 14, at p. 5).  For example,

the Commissioner points to Dr. Kovan's last treatment note from April 2016.  In this note he recorded that Ramsey had negative straight leg raising test, functional range of motion in her lower back, normal motor strength, and no obvious instability in her lower back and legs.  (*Id.* at p. 7; Tr. 519-20).  The Commissioner maintains this record, and records similar to it, are inconsistent with Dr. Kovan's opinion that Ramsey cannot lift more than 10 pounds or that she had very limited ability to sit, stand, or walk.  The Commissioner contends that Dr. Kovan's opinions are also inconsistent with the MRIs in the record which showed disc bulges with no evidence of herniation and unobstructed spinal canal and neural foramen.  (*Id.* at p. 8).  According to the Commissioner, the ALJ's discussion of the medical evidence prior to weighing the medical opinion provided good reason to discount Dr. Kovan's opinion because the ALJ discussed the medical evidence that is inconsistent with the opinions.  (*Id.* at p. 12-13).

Alternatively, the Commissioner argues that if the ALJ did not provide good reasons, any error is harmless because the opinions from Dr. Kovan are patently deficient because they consist solely of checkboxes indicating various limitations and contain no explanation.  (*Id.* at p. 14).

Finally, the Commissioner argues that substantial evidence supports the ALJ's decision not to accept Ramey's allegations of disabling symptoms.  In declining to accept her subjective complaints, the ALJ considered her daily

6

activities and medical evidence.  (*Id.* at p. 15).  The Commissioner contends that

the ALJ did not rely on Ramsey's ability to knit, drive, and perform some basic

household chores.  Rather, the ALJ pointed to Ramsey's improvement with

psychiatric medications, pain medications, injections, the fact that examinations

did not show any disabling abnormalities, and the lack of evidence showing

ongoing seizures or irritable bowel syndrome.  (*Id.* at p. 15-16).

### D.   Supplemental Briefing and Authority

On leave of the Court, Ramsey filed a supplement brief arguing for remand

of the ALJ decision for *de novo* review because the administrative proceeding was

held before an ALJ who was not appropriately appointed pursuant to the

Appointments Clause of the Constitution.  (Dkt. 17).  The Commissioner

responded (Dkt. 18), Ramsey replied (Dkt. 19), and the parties filed supplemental

authority on the issue thereafter (Dkts. 20, 21, 22).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in

which the administrative agency handles claims, and the judiciary merely reviews

the agency determination for exceeding statutory authority or for being arbitrary

and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative

process itself is multifaceted in that a state agency makes an initial determination

that can be appealed first to the agency itself, then to an ALJ, and finally to the

Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found

during this administrative review process, the claimant may file an action in federal

district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

 This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

> B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     <u>Analysis and Conclusions</u>

1.     Treating Physician

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff did not have a "diminished capacity for lifting/carrying."  *Id*.  And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight.  *Id*. at 441.  Further, the plaintiff's own statements undermined the doctor's opinion.  *Id*.

Dr. Kovan provided two opinions on Ramsey's ability to function in light of her back issues, one in July 2016 and the other in August 2016.  (Tr. 621, 648-49).

The first of these opinions is a one-page, two-question opinion in which Dr. Kovan indicated that Ramsey's bilateral low back pain with sciatica, lumbar radiculopathy, costochondral pain, seizures, depression, and debility constitute severe impairments, and that in his opinion Ramsey could not engage in light work as that term is defined in the Regulations.  (Tr. 621).  The second opinion is a two-page checkmark opinion.  Dr. Kovan listed the complaints and symptoms for which he treated Ramsey as (as far as is legible) back pain, debility, and history of (possibly) sciatica.  (Tr. 648).  He listed the medically supported conditions that require his ongoing treatment as L5 radiculopathy, chronic back pain, costochondritis, depression/anxiety, and right elbow and wrist sprain.  In this opinion, Dr. Kovan provided checkmark responses to a series of questions.  He indicated that Ramsey's medication side effects include diminished concentration/slowed thought, and somulence or lethargy.  (Tr. 648).  Dr. Kovan indicated that Ramsey's pain and the effects of her medication would not significantly interfere with the ability to do sustained tasks but that she would miss three or more days of work per month.  (Tr. 649).  Regarding her functional abilities, Dr. Kovan indicated that Ramsey could sit for 2-4 hours in a workday, stand/walk for 0-2 hours, lie-down/rest 1-2 hours, frequently lift or carry up to 10 pounds with the ability to lift a maximum of 6-10 pounds.  (*Id.*).  The ALJ analyzed Dr. Kovan's opinions as follows:

> As for the opinion evidence, the undersigned gives little weight to the assessment of the claimant's treatment provider, Dr. Kovan, DO, who opined the claimant is disabled and unable to perform light work.  He further indicate [sic] the claimant could stand and walk for no more than 2 hours, sit for no more than 4 hours, and could lift no more than 6 pounds.  (Exhibit l0F; 14F).  The overall medical evidence does not support this assessment.  As noted above, the claimant responded well to injections.  Her physical examinations and psychiatric examinations noted normal to moderate levels of limitation.  The claimant was observed with a normal gait when obtaining treatment in June 2016.  The claimant reported improvement mental status with medications in 2016 as well.  Her MRis [sic] did not indicate any herniation or stenosis.  Accordingly, while the claimant is limited by her physical and mental impairments, she is not limited to the level suggested by Dr. Kovan based on the evidence as a whole.

(Tr. 18).

Having discussed the inconsistencies between Dr. Kovan's opinion and the other evidence in the record in his decision, the ALJ did not err in determining that the opinion was not entitled to controlling weight.  *See Wilson*, *supra*.  In discussing the inconsistency and lack of supportability between Dr. Kovan's opinion and the other medical records, the ALJ attacked both the consistency and supportability of the opinion, as discussed more fully below.

In the ALJ's decision, he discussed the record evidence.  The ALJ then accurately observed that Dr. Kovan's opinion is inconsistent with the other record evidence.   Regarding the fractures to her face and right wrist, the record does not

establish disability due to these injuries.  During a fall down the stairs in November 2013, Ramsey sustained fractures to the right side of her face and a distal radius fracture and ulnar styloid process fracture in her right wrist.  (Tr. 243).  In a consultation with a plastic surgeon following the fall, she denied back pain, neck pain, and joint pain.  (Tr. 252).  By January 2014, the swelling and injury to the right side of her face was reportedly "rapidly improving."  (Tr. 255).  Ramsey underwent a radiology examination of her right wrist in May 2014.  The examination revealed diffuse osteopenia, post-traumatic deformity of the distal radius, fracture lucencies not clearly identified, redemonstrations displaced ulnar styloid fracture fragment.  (Tr. 345).  However, she had full range of motion at the wrist and in the thumb and fingers, could make a full fist and could touch her fingertips to her palm.  (Tr. 368).  During physical therapy for her right wrist Ramsey reported increasing mobility in the wrist, (Tr. 375, 377), and by July 2014 she reported that she was feeling 100% better with symptoms in her wrist, that her range of motion and stiffness were improving, and she had no complaints.  (Tr. 377).  Thus, to the extent at least part of Dr. Kovan's opinions are based on the facial and wrist injuries, the medical evidence does not support his opinions.

Objective medical evidence is inconsistent with Dr. Kovan's opinion.  In October 2014 she had no spinal tenderness and no tenderness in her extremities.  (Tr. 388).  Ramsey's primary care physician, Dr. Sack, did not note any physical

17

examinations.  (*See* Exhibits 4F and 5F).  In November 2015 Ramsey was admitted
to the hospital after making suicidal claims.  A hospital physician observed
Ramsey during this time and noted that, although she stated she was in significant
pain and was asking for medication, she had been seen ambulating in the hallway
without problems and appeared to be somewhat sedated.  (Tr. 501).  On the day of
her discharge from the hospital she reported that she was feeling better and her
pain was in much better control, (Tr. 506), and her gait was within normal limits
(Tr. 507).  Also in November 2015 she underwent an MRI of her back.  The MRI
revealed no evidence of disc herniation or significant spinal canal stenosis.
However, the MRI did reveal slight S-shaped thoracolumbar curvature with
subsequent L2-S1 disc degeneration.  (Tr. 512).  In January 2016 Ramsey
presented to the hospital with complaints of back pain.  Her paraspinal muscles
were tender but the pain improved after pain medications were administered.  (Tr.
656).  In April 2016, she presented to the hospital again but with complaints of
flank pain and pain with urination.  On physical musculoskeletal examination, she
had good range of motion and she ambulated without difficulty.  (Tr. 666).  These
objective medical findings, while perhaps indicating some impairment—the MRI
results revealing slight abnormality—do not support and are inconsistent with Dr.
Kovan's disabling opinions.

Dr. Kovan's own treatment records are also at least partially inconsistent with his own opinions.  Overall, his records show improvement in her condition over time.  For example, in March 2014, Dr. Kovan noted that Ramsey's neck and back were stable but that she was experiencing tenderness and good grip strength in the right wrist.  (Tr. 425).  In May 2015 Dr. Kovan noted 5/5 strength but tenderness in her neck and back area with multiple trigger points.  (Tr. 428).  In August 2014 he noted that Ramsey was doing better with her chronic pain and remained stable and had tenderness and multiple trigger points in her back, but ambulated with a normal gait.  (Tr. 434).  In October and November 2014 Ramsey was noted to have 5/5 strength, positive straight leg raise on the left, an antalgic gait, and limited forward flexion and extension.  (Tr. 437, 440).  By April and May 2015 Dr. Kovan noted that Ramsey was still experiencing neck spasms but also that she was "really doing well."  (Tr. 554).  On physical examination he noted 5/5 strength, tenderness in the lumbar area, negative straight leg raising test and negative Bragard's maneuver.  (Tr. 552,[2] 554).  In August 2015, her back pain and L5 radiculopathy were stable and she was doing better overall but was still experiencing pain.  (Tr. 548).  She was stretching and exercising at that time and was "doing much better."  (*Id.*).  Further, physical examination revealed 5/5 strength in the lumbar and cervical areas, improved range of motion, and stable

---

[2] In this record Dr. Kovan notes both a negative and positive straight leg raise test.

gait. (Tr. 549). In November and December 2015 Ramsey experienced some weakness in her lower extremities and an antalgic gait. (Tr. 542-43, 539-40). By March 2016, however, her strength was back at 5/5 but with a positive straight leg raising test on the left. (Tr. 526-27). Dr. Kovan noted that her L5 radiculopathy and sacroiliac pain were improving. (*Id.*). Notably, in April 2016 Dr. Kovan recorded a thorough physical examination which contradicts his later opinions. Ramsey's cervical and lumbar spine areas had normal spinal alignment, functional active and passive range of motion in all directions, no obvious instability, and normal strength, bulk and tone of muscles. (Tr. 519). Her upper extremities were normal with full range of motion except for tenderness in the right elbow with range of motion. (Tr. 520). Finally, her lower extremities had full functional range of motion, 5/5 strength, normal muscle bulk and tone, and no obvious instability. (Tr. 520). She was able to stand and ambulate independently with a normal gait pattern, no antalgia, and she was able to heel and toe walk without difficulty. (*Id.*). While some of Dr. Kovan's treatment notes are consistent with limitation due to back pain, and Dr. Kovan recorded some positive objective findings over time, his final treatment note in April 2016 stands in marked contrast to his ultimate opinion that Ramsey is disabled.

The ALJ's conclusion that Dr. Kovan's opinions were inconsistent with the medical evidence is thus supported by substantial evidence. As noted, although

many of Dr. Kovan's notes indicate that Ramsey had tenderness around her spine and sometimes indicated positive objective findings, Dr. Kovan's treatment notes do not support his disabling opinion.  Further, treatment notes from other providers do not indicate that Ramsey is as physically limited as Dr. Kovan opined.  The medical and other evidence outlined above provides substantial evidence in support of the ALJ's determination that Dr. Kovan's opinion is entitled to less than controlling weight.

Having discussed the medical evidence which contradicts and is inconsistent with Dr. Kovan's opinions, the ALJ provided good reasons for the weight determination.  While the ALJ did not specifically address the nature and extent of the treating relationship (although the ALJ recognized Dr. Kovan as a treating physician), or any specialization in which Dr. Kovan practices, these omissions are harmless.  As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id.* at 804-05.  As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion,

any procedural error will be harmless.  As demonstrated above, the goal of the

regulation has been met here.  The reasons for giving Dr. Kovan's opinion little

weight are sufficiently clear.

Ramsey faults the ALJ for not discussing more of the evidence that is

inconsistent with Dr. Kovan's opinion in the paragraph in which the ALJ

discounted the opinion.  However, "[a]n ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a

party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

(internal citation marks omitted).  Moreover, the ALJ's decision is to be read as a

whole.  In other words, when an ALJ reviews the record evidence and then weighs

the opinion evidence, the ALJ does not have to repeat all the evidence already

discussed.  *See Athey v. Comm'r of Soc. Sec.*, 2014 WL 4537317 at *4 (E.D. Mich.

2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper

to read the ALJ's decision as a whole . . . it would be a needless formality to have

the ALJ repeat substantially similar factual analyses" in different parts of

the decision").  And, finally, even if there were substantial evidence supporting her

position, because there is substantial evidence supporting the ALJ's decision it

must be affirmed.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th

Cir. 2006) (This Court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion.").

In addition, the undersigned tends to agree with the Commissioner that Dr. Kovan's opinions are patently deficient. As stated above, the regulations require an ALJ to provide good reasons for giving the opinion of a treating physician less than controlling weight. However, one instance where failure to discuss the "good reasons" factors qualifies as harmless error is where the treating source's opinion fits the patently deficient level articulated in *Wilson*. Where a physician's opinion consists primarily of filling in check boxes without an explanation in support, such an opinion is of little practical use to an ALJ. *See Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. Appx. 468, 474-75 (6th Cir. 2016) ("We have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation."); *Keeton v. Comm'r of Soc. Sec.,* 583 Fed. Appx. 515, 525 (6th Cir. 2014) (quoting SSR 96–2p, at *1, which states that "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion"); *see also Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Williams v. Comm'r of Soc. Sec.*, 2018 WL 1322396, at *7 (E.D. Mich. Feb. 26, 2018), *report and recommendation adopted*,  2018 WL 1316167 (E.D. Mich. Mar. 14, 2018) (Opinion entitled only to little or no weight

where it consists of a "check-the-box" form that is unaccompanied by any

meaningful explanation).  In *Jackson v. Comm'r of Soc. Sec.*, 2017 WL 4699721

(E.D. Mich. Oct. 19, 2017), the opinion at issue was in check-box format.  *Id.* at

*7.  Citing *Hernandez*, the court stated that, as such, the opinion was "an impotent

addition to the record with little to no persuasive value—to hold otherwise would

neglect its glaring lack of narrative analysis."  *Id.*; *see also Mason v. Shalala*, 994

F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is

only to check a box or fill in a blank are weak evidence at best.").

　　　Here, Dr. Kovan's July 2016 opinion is simply two marks indicating that

Ramsey's impairments are severe medical impairments and that she is incapable of

sustaining light work.  (Tr. 621).  He did not accompany these marks with any

explanation as to why Ramsey cannot engage in light work except for a partially

legible note indicating increased stress and that lifting increased symptoms.[3]  In the

August 2016 opinion he did little more; Dr. Kovan listed Ramsey's symptoms and

medically supported conditions, including L5 radiculopathy and chronic back pain.

(Tr. 648).  He then checked off a series of functional limitations.  (Tr. 648-49).

When asked on what conditions the limitations were based, he wrote what appears

to be back pain exacerbated by lifting/walking.  (Tr. 649).  This check-box opinion

contains no other attempt at explaining the check marks or why or how plaintiff is

---

[3] There is one other word in this handwritten list that is illegible.  (Tr. 621).

so functionally limited in a work setting, especially considering that in April of that year—the last treatment note in the record from Dr. Kovan—Ramsey had full range of motion and no noted objective problems in her back and extremities.  As such, the undersigned concludes that the opinions are "weak evidence at best" and thus are "so patently deficient that the Commissioner could not possibly credit it." Thus, to the extent there is any error in the ALJ's treatment of Dr. Kovan's opinion, it is harmless.

Lastly, Ramsey contends that the ALJ's discussion of her mental impairments was deficient because she had consistently low GAF scores in the record.  (Dkt. 13, at p. 15).  It is not clear how the ALJ's discussion of her mental impairments and GAF scores is connected to the ALJ's treatment of Dr. Kovan's opinion, although even the ALJ cited normal to moderate levels of psychiatric limitation in the record when weighing Dr. Kovan's opinions.  (*See* Tr. 18).  Dr. Kovan was her pain management physician; he did not treat her mental impairments.  In any event, the undersigned finds no error in the ALJ's discussion of Ramsey's GAF scores.  On the one hand, it is true that the Social Security Administration does not endorse the GAF scale for "use in the Social Security and SSI disability programs" because a GAF score is not determinative of an individual's RFC and has concluded that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings."  *See* Revised Medical

Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg.

50746-01 (August 21, 2000).  On the other hand, while GAF scores may not serve

as the sole basis for making a disability determination, the Sixth Circuit has

indicated that the scores may be taken into account in considering the record as a

whole.  *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235,241 (6th Cir. 2002); *see also*

*Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.

2006).

Here, the ALJ considered Ramsey's GAF score assessments as one factor

amongst many in evaluating her disability.  That is, the ALJ found the GAF scores

were inconsistent with Ramsey's daily activities, social functioning, and

concentration with regard to her mental functioning.  (Tr. 19).  The record reflects

the following GAF scores: In October 2015, her psychiatric hospital admission

GAF was 30 (Tr. 505), on December 15, 2015, her GAF score was 48 (Tr. 639), on

February 12, 2016, she had a current GAF score of 25 and a recorded highest GAF

score of 50 (Tr. 629).  While she presented to mental health professionals with low

GAF scores at times and she suffers from conditions such as depression and

anxiety, the record reflects that she far more often presented to various medical

providers with good or neutral mood, appropriate affect, and normal thought

content.  (*See, e.g.,* Tr. 253, 251, 359, 409, 477, 489, 629).  In her follow-up exam

with Dr. Sack after her five-day psychiatric hospitalization in October to

November 2015, Dr. Sack noted neutral mood and appropriate affect, logical thought processes and normal thought content.  (Tr. 477).  Thus, even taking into account the few low GAF scores in the record, substantial evidence supports the ALJ's determination that her mental impairments are not debilitating.  The undersigned finds no error in the ALJ's assessment of Ramsey's mental impairment and GAF scores.

2.    Credibility

"Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ."  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably

be expected to produce the claimant's alleged symptoms, s/he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible.  SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929.  "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The ALJ found Ramsey's subjective complaints not entirely consistent with the medical and other evidence in the record.  (Tr. 15-16).  In doing so, the ALJ found that her allegations were not fully consistent with her statements "as a whole" and that the medical evidence does not support her allegations as to the level of limitation alleged.  (Tr. 16).  The parties disagree on the ALJ's characterization of Ramsey's daily activities.  In discussing the inconsistency between Ramsey's reported activities and her allegations, the ALJ said the following:

> The claimant's allegations are not fully consistent with her statements as a whole.  The claimant reported she experiences seizures every day, but also indicated she takes no medication for this condition.  (Exhibit 3E).

> Additionally, although noting that she loses vision for 30 seconds when experiencing these daily seizures, she testified she drives. The claimant reported significant limitations in her activities of daily living, however, in her function report she indicated she is able to perform most personal care at a slower pace, she is able to prepare meals for herself daily, she is able to perform chores such as laundry, vacuuming, and loading the dishwasher. She also reported she enjoys crocheting as a hobby. This is inconsistent with her claims of wrist pain that makes buttoning buttons extremely difficult. She reported she is able to shop in stores, by phone, and by computer. She is able to drive and can go out alone. She is able to manage her finances. She alleged no social activities, but indicated she spends time with others once or twice a month talking and eating. (Exhibit 4E).

(Tr. 16).

In the view of the undersigned, there is no compelling reason to disturb the ALJ's credibility determination. The ALJ determined that Ramsey's reported activities are inconsistent with her allegations of disability. In her function report, Ramsey further explained some of her activities. For instance, she stated that she is able to prepare food daily in the microwave—although usually only once a day—and will prepare a non-microwave meal once every two weeks. (Tr. 179). She stated that she does the laundry, vacuums, and loads the dishwasher, but "sometimes" her daughter and her husband help with these chores. (*Id.*). She stated that she crochets about every two months. (Tr. 181). Although Ramsey provided more information in her function report than the ALJ recounted, it does not appear that the ALJ mischaracterized her activities. Ramsey said she could

take care of personal needs, make simple meals, drive, and crochet, just as the ALJ stated. The ALJ did not go so far as to say she was engaging in all of these activities every day or multiple times a day, which would have been a mischaracterization.

It is not inappropriate for an ALJ to discuss a claimant's daily activities and compare those activities to the allegations of disability. *Keeton v. Comm'r of Soc., Sec.*, 583 Fed. Appx. 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters*, 127 F.3d at 532) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, an ALJ may . . . consider [such] activities...in evaluating a claimant's assertions of pain or ailments.") (internal quotations omitted). Here, it was not inappropriate for the ALJ to conclude that these activities were inconsistent with the allegations of disabling pain. *See, e.g., Downs v. Comm'r of Soc. Sec.*, 634 Fed. Appx. 551, 556–57 (holding that similar inconsistent statements reasonably supported the ALJ's conclusion that the claimant's allegations of the extent of her physical impairments were not credible); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543–44 (6th Cir. 2007) (noting that the ALJ's adverse credibility finding was supported, among other things, by the claimant's ability to "do a variety of daily activities," such as washing "dishes, light cooking, talk[ing] on the telephone, shop[ping]" and occasionally going to church).

Further, the ALJ did not rely solely on Ramsey's daily activities; he also relied on the inconsistency between her allegations and the medical evidence. *Keeton*, 583 Fed. Appx. at 532.  Notably, the ALJ did not say that any of Ramsey's activities, individually or in combination, equated with an ability to sustain full-time work.  Rather, the ALJ found that they showed that she was less limited in her functional abilities than she alleged, which is a permissible credibility consideration.  *See Garcia v. Comm'r of Soc. Sec.*, 2018 WL 838371, at *15 (N.D. Ohio Feb. 12, 2018) (citing *Walters*, 127 F.3d at 532 (an ALJ may consider household activities in evaluating the credibility of the claimant's allegations of disabling symptoms); *Temples v. Comm'r of Soc.  Sec.*, 515 Fed. Appx. 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities.  Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). The ALJ's determination that Ramsey's subjective complaints were inconsistent with the medical evidence is supported by substantial evidence, as demonstrated above.  As stated, the medical evidence largely reveals normal examination and improvement in pain with medication.  This is inconsistent with her complaints of disability.  Again, while Ramsey is limited by her impairments, the record does not support that she is limited to a degree that prevents her from sustaining work

activities.  In light of the deference due an ALJ's credibility determination, the

undersigned finds no compelling reason to disturb the ALJ's determination here.

### 3.   Appointments Clause Challenge

Ramsey's argument for remand because the ALJ below was not properly

appointed according to the Appointments Clause is based on *Lucia et al. v. SEC*,

138 S.Ct. 2044 (2018), which held that ALJs of the Securities and Exchange

Commission are "Officers of the United States" within the meaning of

the Appointments Clause of the Constitution and must be appointed by the

President, a court of law, or department head.  *Lucia*, 138 S.Ct. at 2051.  Ramsey

contends that since the ALJ in her case was not properly appointed, her case should

be remanded for *de novo* review by a properly appointed ALJ.

The *Lucia* Court held that the plaintiff raised a timely challenge to the

constitutionality of the ALJ's appointment while the case was at the administrative

level and was entitled to a remand for a hearing by a properly appointed ALJ.

"'[O]ne who makes a timely challenge to the constitutional validity of the

appointment of an officer who adjudicates his case' is entitled to relief." *Id.* at

2055(*citing Ryder v. United States*, 515 U.S. 177, 182, 115 S.Ct. 2031, 132

L.Ed.2d 136 (1995)).  Although *Lucia* specifically addressed only SEC ALJs, the

Solicitor General has acknowledged that the Supreme Court's holding

encompasses all ALJs, and the Acting Commissioner of Social Security ratified the

appointment of the agency's ALJ's in July 2018 to address any Appointments Clause deficiency going forward. *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 903 (E.D. Mich. 2018).

Citing *Jones Brothers v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018), Ramsey contends that her failure to raise the constitutional issue at the administrative level should be excused. (Dkt. 17, at p. 3). In *Jones Brothers* the Sixth Circuit acknowledged that as-applied Appointments Clause challenges are nonjurisdictional and are forfeited if not raised timely.[4] *Id.* at 676-77. However, the Court determined that, although the plaintiff had failed to "press" an Appointments Clause argument before the agency, the plaintiff had identified the issue and the existence of a split in authorities to the Mine Commission at the administrative level. *Id.* at 673, 678. Given the possible "confusion" created by the administrative review scheme of the Mine Act, the Sixth Circuit held that the plaintiff's approach – identifying the Appointments Clause issue but not pressing the argument – was "a reasonable statement from a petitioner who wishes to alert the Commission of a constitutional issue but is unsure (quite understandably) just what the Commission can do about it." *Id.* at 678. Thus, the Sixth Circuit vacated

---

[4] Ramsey's challenge here is an "as-applied" challenge. As stated in *Page*, "[b]ecause '[t]he Social Security Administration has not published a regulation or rule that governs how it appoints judges,' the current case is properly characterized as an 'as applied' challenge." 344 F. Supp. 3d at 904 (quoting *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018).

the Commission's decision and remanded the case to the administrative level

"[b]ecause the administrative law judge was an inferior officer of the United States

and because she was not appointed by the President, a court of law, or the head of a

department, as the Constitution demands."  *Id.* at 672.

Here, unlike in *Jones Brothers*, Ramsey did not identify her Appointments

Clause challenge or even note a circuit split in any way at any point in the

administrative proceedings and has not shown good cause for her failure to do so.

*See Page*, 344 F. Supp. 3d at 904 ("The facts of this case do not warrant making an

exception to the general rule that the failure to bring as-applied claims at the

administrative level results in waiver.").  As in *Page*, "[b]ecause Plaintiff failed to

make an argument or even note a split of authority pertaining to the appointment of

the ALJ at any point in the administrative procedure, the *Jones Brothers* holding

cannot be extended to the facts of the present case."  *Id.* (quoting *Davidson v.

Comm'r of Soc. Sec.*, 2018 WL 4680327, at *1 (M.D. Tenn. Sept. 28, 2018)

("Courts 'generally expect parties ... to raise their as-applied or constitutional-

avoidance challenges' at the administrative level and 'hold them responsible for

failing to do so.'"); s*ee also Faulkner v. Comm'r of Soc. Sec.*, No. 1:17-cv-01197,

2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018) (declining to apply *Jones

Brothers* and finding that the plaintiff "did nothing to identify his Appointments

Clause challenge at any point in the administrative proceedings and ha[d] not

shown good cause for his failure to do so").  Ramsey did not raise the

Appointments Clause issue before the ALJ or the Appeals Council; therefore, the

undersigned finds that she has forfeited this argument.

Citing *Sims v. Apfel*, 530 U.S. 103, 108 (2000), Ramsey argues that she was

not required to raise the constitutional challenge with the ALJ because Social

Security regulations do not require issue exhaustion.  (Dkt. 17, at p. 4).  *Sims* held

that "a claimant pursuing judicial review has [not] waived any issues that he did

not include in [his or her] request" for review by the Appeals Council.  *Id.* at 105.

However, *Sims* did not "address[] whether the issue had to be raised before the

ALJ," as opposed to being raised before the Council.  *Stearns*, 2018 WL 4380984,

at *5.  Since *Sims* was decided, "[c]ourts have considered the issue [of whether a

claimant must exhaust issues before the ALJ] . . .  have [in large part] concluded

that *Sims* should not be read so broadly as to mean that a claimant need not exhaust

issues before the ALJ."  *Flack v. Comm'r of Soc. Sec.*, 2018 WL 6011147, at *3

(S.D. Ohio Nov. 16, 2018) (collecting cases).  In addition, courts considering this

issue of forfeiture have overwhelmingly concluded that where a claimant fails to

raise the challenge at the administrative level the claimant forfeits the challenge in

the district court.  *See, e.g., Page, supra*; *Axley v. Comm'r of Soc. Sec.*, 2019 WL

489998 (W.D. Tenn. Feb. 7, 2019); *Willis v. Comm'r of Soc. Sec.*, 2018 WL

6381066 (S.D. Ohio Dec. 6, 2018); *Faulkner v. Comm'r of Soc. Sec.*, 2018 WL

6059403 (W.D. Tenn. Nov. 19, 2018); *Flack v. Comm'r of Soc. Sec.*, 2018 WL

6011147, at *4 (S.D. Ohio Nov. 16, 2018); *Stearns v. Berryhill*, 2018 WL

4380984, at *6 (N.D. Iowa September 14, 2018); *Garrison v. Berryhill*, 2018 WL

4924554, at *2 (W.D.N.C. October 10, 2018); *Salmeron v. Berryhill*, 2018 WL

4998107, at *3 (C.D. Cal. October 15, 2018).[5]

Finally, the undersigned disagrees with Ramsey's argument that raising such

a challenge before the ALJ would have been futile because the ALJ did not have

the authority to issue a ruling on matter.  (Dkt. 19, at p. 1-2).  She cites no authority

for her proposition that raising the argument before the ALJ would have been futile

in particular because "[i]t is inconceivable that the ALJ in the underlying

administrative proceeding would have ruled that his appointment was

unconstitutional."  (*Id.*).  In any event, a regulation in effect prior to Ramsey's case

here states that claimants may receive an expedited appeals process to challenge a

"provision in the law that you believe is unconstitutional."  20 C.F.R. § 404.924(d).

"Although the language of the [regulation] appears to refer to facial challenges to a

statute, regulation, or rule, it establishes, at a minimum, that the Appeals Council is

---

[5] Although there are a few decisions which recommend remand on Appointments Clause challenges such as Ramsey's, *see, e.g., Muhammad v. Berryhill*, No. 18-172 (E.D. Pa., Nov. 2, 2018); *Godschall v. Comm'r of Soc. Sec.*, No. 18-1647 (E.D. Pa., Nov. 2, 2018); *Fortin v. Comm'r of Soc. Sec.*, 2019 WL 421071 (Feb. 1, 2019), the undersigned is persuaded by the reasoning of the majority of courts that a plaintiff forfeits her Appointments Clause challenge by failing to raise it at the administrative level.  The undersigned declines to follow the minority approach.

able to consider constitutional challenges." *Page*, 344 F. Supp. 3d at 905, n.6. Thus, the undersigned is not persuaded that it would have been futile for plaintiff to raise an Appointments Clause challenge during the administrative proceedings in this case.

For these reasons, the undersigned suggests that Ramsey's request for remand based on her Appointments Clause challenge be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 25, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge